

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| ERIK SALAIZ,<br><br>    Plaintiff,<br><br>v.<br><br>CARGUARD ADMINISTRATION INC, a Arizona Corporation, VEHICLE SERVICE DEPARTMENT, and AUTO CARE WARRANTY SOLUTIONS LLC<br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§  EP22CV0172 |

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. Plaintiff ERIK SALAIZ ("Plaintiff") is a natural person and is a citizen of the Western District of Texas and was present in the Western District of Texas during all calls at issue in this case.

2. Defendant CARGUARD ADMINISTRATION INC ("Carguard") is a Corporation organized and existing under the laws of Arizona with a principal address at 1776 N Scottsdale Rd, Unit 2827, Scottsdale AZ 85252 and can be served via registered agent Incorp Service, Inc. at 815 Brazos St, Suite 500, Austin, TX 78701.

3. Defendant VEHICLE SERVICE DEPARTMENT ("VSD") is a an unknown entity that will be revealed during discovery and is listed in the Vehicle Service Contract as the seller with an address of 6789 Quail Hill Pkwy, Suite 722, Irvine, CA 92603.

4. Defendant AUTO CARE WARRANTY SOLUTIONS LLC ("Auto Care") is a Limited Liability Company organized and existing under the laws of California with a principal

1

address at 2000 W 4th Street, Suite 304 Santa Ana, California 92705 and can be served via registered agent Nina Nickell at 1019 Costa Pacifico, #1407 Oceanside, California 92054.

5. Defendants Carguard, Vehicle Service Department, and Auto Care Warranty Solutions LLC all together ("Defendants")

## NATURE OF ACTION

6. Plaintiff brings this Complaint and Demand for Jury Trial against Defendants to stop placing illegal robo and unauthorized calls to Plaintiff's personal cell phone and to obtain redress as authorized by statute.

7. Defendants offer vehicle service contracts ("VSC's") to consumers. As part of marketing their services, Defendants and their agents placed illegal robocalls to Plaintiff's cell phone that used an automated telephone dialing system ("ATDS").

8. Defendants make unsolicited and unauthorized phone calls to consumers using false and misleading statements saying they are part "Nissan licensed specialist's" to sell their VSC's.

9. Defendants did not obtain express written consent from Plaintiff prior to calling his cell phone, and Defendants are therefore liable under the Telephone Consumer Protection Act 47 U.S.C. § 227 (the "TCPA") and its implementing regulation, 47 C.F.R. § 64.1200(a)(2).

10. Congress enacted the TCPA in 1991 to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but

2

were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

11. The TCPA targets unauthorized calls exactly like the ones alleged in this case, based on Defendants use of technological equipment to spam consumers on a grand scale without their consent.

12. By placing the calls at issue, Defendants have violated the statutory rights and privacy of Plaintiff and caused him to suffer damages that are recognized by statute.

13. Plaintiff therefore seeks an injunction requiring Defendants to stop calling his personal cell phone, as well as an award of actual and statutory damages, civil penalties, costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

14. This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this case arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

15. This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim arises from the same nucleus of operative fact, i.e., Defendants telemarketing robocalls to Plaintiff; adds little complexity to the case; and doesn't seek money damages, so it is unlikely to predominate over the TCPA claims.

16. This Court has personal jurisdiction over Defendants because they conduct business in this District and in the State of Texas and because the events giving rise to this lawsuit occurred in this District.

17. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendants

3

regularly conducts business in the state of Texas and in this District, and because the wrongful conduct giving rise to this case occurred in this District.

## FACTUAL ALLEGATIONS

18. Plaintiff received at least four unauthorized robocalls to his personal cell phones (915) 252-9280 and (915) 929-1527 from or on behalf Defendants within a 60-day period.

19. Defendant Cargurad is the administrator of the VSC's and has complete control over the sellers they hire to solicit their VSC's. Defendant Carguard knowing and willfully authorizes them to place illegal robocalls to millions of consumers en mass because it benefits Defendants financially when consumers purchase their VSC's.

20. Plaintiff's personal cell phone (915) 252-9280 has been successfully registered on the National Do Not Call Registry since August 24, 2006.

21. Plaintiff's personal cell phone (915) 929-1527 has been successfully registered on the National Do Not Call Registry since April 6, 2022.

22. Defendants offer VSC's saying their "Nissan licensed specialist's" and that their VSC will extend the consumers vehicle factory warranty.

23. Defendant Carguard is listed as the Administrator of the VSC's Plaintiff received in the mail from Defendants.

24. Defendant Carguard has been sued multiple times for TCPA violations including the one Plaintiff sued them in *Salaiz v. A-List Marketing Solutions, Inc et al*, No. 3:21-cv-00277-DCG (W.D.TX., Nov 5. 2021) and refuse to curtail their behavior because violating the TCPA benefits Defendant Carguard financially.

25. Defendant Auto Care has been sued multiple times for TCPA violations *Reisman v. Auto Care Warranty Solutions, LLC*, No. 2:20-cv-10449-KM-ESK (D.NJ., Aug 13, 2020) and

4

*Moore v. Auto Care Warranty Solutions, LLC*, No. 1:20-cv-04801 (N.D.IL., Aug 15. 2020) and refuse to curtail their behavior because violating the TCPA benefits Defendant Auto Care financially.

26. The phone calls Plaintiff received from or on behalf of Defendants came from spoofed caller ID's that were initiated using an automatic telephone dialing system ("ATDS") and generally had a delay of 3-4 seconds of dead air before an audible tone connected Plaintiff to a representative, indicating the calls were initiated using an ATDS.

27. On March 9, 2022, and March 10, 2022 Plaintiff received a phone call to his personal cell phone (915) 252-9280 from or on behalf of Defendants VSD and Carguard.

28. Each time Plaintiff answered and there was a 3-4 second delay followed by a beep before being connected to a male telemarketer saying he was calling with Vehicle Service Department asking if Plaintiff was the owner to a 2011 Ford F150 and the call disconnected.

29. On March 17, 2022 Plaintiff received a phone call to his personal cell phone (915) 252-9280 from or on behalf of Defendants.

30. Plaintiff answered and there was a 3-4 second delay followed by a beep before being connected to a male telemarketer named Chris saying he was calling with Vehicle Service Department asking if Plaintiff was the owner to a 2011 Ford F150.

31. Plaintiff was extremely annoyed, frustrated, and aggravated for continuing to receive the same phone calls and continued the phone call with Chris for the sole purposes of identifying the companies responsible for the illegal robocalls.

32. Chris then asked Plaintiff qualifying questions about his vehicle and solicited Plaintiff for a VSC on behalf of Defendants VSD and Carguard.

33. Chris advised Plaintiff he was going to transfer him to his "Nissan licensed specialist."

34. Plaintiff was then transferred to another representative named Justin who said he was a "Nissan licensed specialist."

35. Justin then asked Plaintiff questions about Plaintiff's vehicle and solicited Plaintiff for a VSC on behalf of Defendants VSD and Carguard.

36. Plaintiff advised Justin he was interested in a VSC for the sole purposes of identifying the companies responsible for the illegal robocalls.

37. Justin then transferred Plaintiff to the "verification department" and spoke with Autumn and James who verified Plaintiff's personal and vehicle information.

38. Plaintiff received a VSC in the mail via USPS with a contract #:CGC30710310 that lists Defendant VSD as the seller and Defendant Carguard as the administrator of the VSC revealing the companies responsible for the illegal robocalls.

39. Plaintiff searched the California secretary of state records and all other states for Defendant VSD and there are no known entities listed under Vehicle Service Department. With information and belief Defendant VSD is a fictious name registered to an entity that is unknown to Plaintiff at this time but will be revealed during discovery.

40. On May 9, 2022 Plaintiff received a phone call to his personal cell phone (915) 929-1527 from or on behalf of Defendants Auto Care and Carguard.

41. Plaintiff answered and there was a 3-4 second delay followed by a beep before being connected to a male telemarketer named Jeremy saying he was calling with Dealer Service asking if Plaintiff was the owner to a 2019 Honda Accord.

42. Jeremy then asked Plaintiff qualifying questions about his vehicle and solicited Plaintiff for a VSC on behalf of Defendants Auto Care and Carguard.


43. Plaintiff advised Jeremy he was interested in a VSC for the sole purposes of identifying the companies responsible for the illegal robocalls.

44. Jeremy advised Plaintiff he was going to transfer him to his "Nissan licensed specialist."

45. Plaintiff was then transferred to another representative named William who said he was a "senior coverage specialist."

46. William then asked Plaintiff questions about Plaintiff's vehicle and solicited Plaintiff for a VSC on behalf of Defendants Auto Care and Carguard.

47. Plaintiff advised William he was interested in a VSC for the sole purposes of identifying the companies responsible for the illegal robocalls.

48. William then transferred Plaintiff to the "verification department" and spoke with Jamie who verified Plaintiff's personal and vehicle information.

49. Plaintiff received a VSC in the mail via USPS with a contract #:CGC26261797 that lists Defendant Auto Care as the seller and Defendant Carguard as the administrator of the VSC revealing the companies responsible for the illegal robocalls.

50. Defendants train their agents and telemarketers not to provide their real name until a consumer purchase one of their VSC's in order to hide their true identity and duck liability.

51. Defendants approve of the contracts with the telemarketers who make illegal robocalls to thousands of consumers cellular and residential phone numbers using an ATDS.

52. Defendants provide instruction and guidance on who to solicit and the minimum qualifications of potential clients.

53. Table A below displays the calls made to Plaintiff's cell phone (915) 252-9280 by Defendants VSD and Carguard.

Table A:

| Date | Time | Caller ID |
|---|---|---|
| 3/9/2022 | 9:44AM | 915-834-1500 |
| 3/10/2022 | 8:32AM | 214-363-2886 |
| 3/17/2022 | 10:42AM | 682-205-8303 |

54. Table B below displays the call made to Plaintiff's cell phone (915) 929-1527 by Defendants Autocare and Carguard.

Table B:

| Date | Time | Caller ID |
|---|---|---|
| 5/9/2022 | 11:37AM | 940-233-9425 |

55. Defendants employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

56. None of the Defendants registered pursuant to § 302.101 of the Texas Business & Commerce Code to provide telephone solicitations. The https://direct.sos.state.tx.us/telephonesearch.asp site ("Texas Registration Database") does not contain any of the Defendants' registrations.

57. None of the Defendants qualify for an exemption under § 302.053.

58. No emergency necessitated none of the alleged illegal robocalls.

59. Defendant Carguard never sent Mr. Salaiz any do-not-call policy. Plaintiff sent an internal do-not-call policy request to cs@carguard.com on May 14, 2022 which is the only email listed on their website https://www.carguardadmin.com.

60. Defendant Auto Care never sent Mr. Salaiz any do-not-call policy. Plaintiff sent an internal do-not-call policy request to cs@autocarews.com on May 15, 2022 which is the only email listed on their website https://www.autocarews.com.

61. On information and belief, the Defendants did not have a written do-not-call policy while it was sending Mr. Salaiz the unsolicited calls.

62. On information and belief, the Defendants did not train its agents who engaged in telemarketing on the existence and use of any do-not-call list.

63. It is evidently Defendants' business practice to continue placing sales calls to consumers who have already made DNC requests and who have stated they are not interested in Defendants' services. Such conduct violates the TCPA and its implementing regulations, 47 CFR § 64.1200(d)(3)(requiring telemarketers to honor and record DNC requests when made).

64. Defendants participated in, facilitated, directed, authorized, knew of or willfully ignored the false and misleading sales practices and unlawful robocalling, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful robocalling.

65. Defendants have knowledge of and have adopted and maintained TCPA violations as a sales strategy. This is amply supported by the complaints Defendants receive that are available from the Better Business Bureau ("BBB"). The full scale of the complaints Defendants receive is not currently available to Plaintiff but will be revealed through discovery to amplify what is shown below.

66. Defendants refuse to take any action to stop or curtail the unlawful sales practices and robocalling because these practices benefit Defendants financially when consumers purchase their VSC's.

67. Plaintiff never gave his prior express written consent to receive the calls alleged herein. Plaintiff had no relationship with Defendants prior to the calls alleged herein.

## VICARIOUS LIABILITY OF DEFENDANT CARGUARD

68. Defendant Carguard is liable for the phone calls initiated by the anonymous telemarketers under the theories of actual authority, apparent authority, and ratification, and as well as liable because any other result would impair the underlying purpose of the TCPA.

69. Defendant Carguard has hired third-party anonymous telemarketers to solicit VSC's on behalf of Defendant Carguard and given the telemarketers the authority to decide which prospective consumers to transfer to Defendants VSD and Auto Care based on the qualification criteria Defendant Carguard provided to the authorized telemarketers.

70. Defendant Carguard is the liable party as the direct beneficiary of the illegal telemarketing calls as it stood to gain Plaintiff as a client and sold Plaintiff a VSC.

71. Defendant Carguard maintained control over the telemarketers by instructing them on what type of consumers to call and which consumers to refer to Defendant based on the Defendant's stated minimum qualifications.

72. Defendant Carguard ratified the behavior of the telemarketers by accepting referrals from the telemarketers.

### The Texas Business and Commerce Code 305.053

73. The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

74. The Plaintiff may seek damages under this Texas law for violations of 47 USC 227

10

or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

### Violations of the Texas Business and Commerce Code § 302.101

75. The actions of the defendants violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having registration certificate and bond on file with the Texas Secretary of State.

76. Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

77. The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

78. Texas Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

79. Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

### INJURY, HARM, DAMAGES, and ACTUAL DAMAGES

11

## AS A RESULT OF THE CALLS

80. Plaintiff has been denied the use of his phone, enjoyment of his phone, and had the functionality of his phone decreased because of unnecessary charging, erosion of phone memory, and had his privacy invaded by the harassing robocalls.

81. Defendant's calls harmed the Plaintiff by causing the very harm that Congress sought to prevent a "nuisance and invasion of privacy."

82. Plaintiff has been annoyed, harassed, and irritated by robocalls placed by the Defendants and other similar companies.

83. Defendant's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone by placing unwanted telemarketing calls to the Plaintiff.

### Plaintiff's cell phones are residential numbers

84. The calls were to the Plaintiff's cellular phones (915) 252-9280 and (915) 929-1527 which are Plaintiff's personal cell phones that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phones for navigation purposes, sending and receiving emails, watching movies, listening to music and sending and receiving text messages. The Plaintiff further has his cell phones registered in his personal name and pays the cell phones from his personal accounts.

## **FIRST CAUSE OF ACTION**

Willful and/or Knowing Violation of 47 U.S.C. § 227
Telephone Consumer Protection Act of 1991
(Against all Defendants)

85. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

86. Defendants and/or their agents placed calls to Plaintiff's cellular telephone.

87. Plaintiff never consented to receive calls from Defendants. Plaintiff has no relationship with Defendants.

88. Defendants' calls were made for purposes of advertising and marketing Defendants' VSCs. These calls constituted commercial advertising and telemarketing as contemplated by the TCPA.

89. The calls were made using an automatic telephone dialing system ("ATDS") to the cellular phones of Plaintiff in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and (B).

90. As a result of their unlawful conduct, Defendants repeatedly invaded the personal privacy of Plaintiffs, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling Plaintiff to recover $500 in statutory damages for each violation and an injunction requiring Defendants to stop their unlawful calling campaigns.

91. Not only did Defendants make these violating calls, Defendants and/or their agents did so "knowingly" and/or "willfully' under 47 U.S.C. § 227 (b)(3)(C).

92. If the Court finds that Defendants willfully or knowingly violated this subsection, the Court may exercise its discretion to increase the amount of the award from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

## SECOND CAUSE OF ACTION

### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 C.F.R. § 64.1200(C))

94. Mr. Salaiz realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

95. Defendants called Plaintiff's private residential telephone numbers which were successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

96. Plaintiff was statutorily damaged at least four (4) times under 47 U.S.C. § 227(c)(3)(F) by the Defendants by the telephone calls described above, in the amount of $500 per call.

97. Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## THIRD CAUSE OF ACTION
### Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)
### (Against All Defendants)

98. Plaintiff incorporates the forgoing allegations as if fully set forth herein.

99. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

   a. written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1) [1];

---

[1] *See id.* at 425 (codifying a June 26, 2003 FCC order).

 b. training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2)[2]; and,

 c. in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[3]

100. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

101. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

## FOURTH CAUSE OF ACTION
**Violations of The Texas Business and Commerce Code 305.053**

102. Plaintiff incorporates the foregoing allegations as if set forth herein.

103. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Mr. Salaiz cellular telephone numbers without his prior express written consent in violation of 47 USC 227 et seq. The Defendants violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

104. Plaintiff is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order

15

105. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053(c)**

## FIFTH CAUSE OF ACTION

### (Violations of The Texas Business and Commerce Code 302.101)

106. Plaintiff incorporates the foregoing allegations as if set forth herein. by reference each and every allegation set forth in the preceding paragraphs.

107. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101**, by making non-registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

108. Plaintiff is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 302.302.**

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Erik Salaiz prays for judgment against the defendants jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C. An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individual for four calls.

16

    E.    An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

    F.    An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

    G.    An award to Mr. Salaiz of damages, as allowed by law under the TCPA;

    H.    An award to Mr. Salaiz of interest, costs and attorneys' fees, as allowed by law and equity

    I.    Such further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

May 16, 2022,                             Respectfully Submitted,

*/s/ Erik Salaiz*

Erik Salaiz
Plaintiff, Pro Se
319 Valley Fair Way
El Paso, Texas 79907
915-252-9280
Salaiz.ep@gmail.com